UNITED STATES of America

v.

CUONG GIA LE, et al.

No. CRIM. 03–48–A.

United States District Court,
E.D. Virginia.
Alexandria Division.

April 23, 2004.

James Trump, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for U.S.

Frank Salvato, Alexandria, VA, James Goodman Connell, III, Devine & Connell PLC, Fairfax, VA, for Cuong Gia Le.

Marvin D. Miller, Alexandria, VA, for Loc Tien Nguyen.

Dale W. Dover, Alexandria, VA, for Phu Van Ho.

Larry C. Brown, Jr., Alexandria, VA, for Vu Hoang Nguyen.

### MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this multi-count RICO prosecution of the four remaining co-defendants [1] in this matter is whether severance is required under various theories offered

---

1. There have been six indictments in this case: the original indictment and five (5) superseding indictments. The original indict- ment and the First Superseding Indictment did not involve any of the current defendants in the case, except Cuong Gia Le. Loc Tien

by defendants. More specifically, Cuong Gia Le, the only capital defendant in this case, has moved to sever his trial on three grounds: (1) that the introduction of the out-of-court statements of Vu Hoang Nguyen (a.k.a. Vincent) and Loc Tien Nguyen violates his Sixth Amendment right to confront the witnesses against him, based on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny; (2) that a joint trial of a capital defendant with noncapital co-defendants violates Le's Eighth Amendment rights; and (3) that a joint trial violates Le's Fifth Amendment right to notice of the basis for seeking the death penalty. Phu Van Ho has moved to sever his trial on the ground that the introduction of Loc Tien Nguyen's out-of-court statement violates his Sixth Amendment right under *Bruton.* Finally, Loc Tien Nguyen moves for severance on five grounds: (1) *Bruton;* (2) the theory that his joint trial with a capital defendant violates his Sixth Amendment right to a fair trial because a "death-qualified" jury will be empaneled; (3) conflicting defense theories; (4) disparities in the degree of involvement of co-defendants; and (5) his right to a speedy trial.

For the reasons stated below, severance is not required under *Bruton* or any of the other theories offered by defendants; and their trials may, and appropriately should, proceed jointly.

## I.

For a description of the charges and allegations in this matter, see *United*

States v. Cuong Gia Le et al., 310 F.Supp.2d 763 (E.D.Va.2004).[2] A brief summary suffices here.

In brief, the government alleges that the four remaining defendants—Cuong Gia Le, Loc Tien Nguyen, Phu Van Ho, and Vu Hoang Nguyen—are active members of a criminal enterprise or gang known as the "Oriental Playboys" or "OPB." According to the government, the defendants and other OPB members used this enterprise to commit various crimes, including burglary, drug distribution, credit card fraud, murder, assault, robbery, and firearms violations in Virginia, Maryland, and elsewhere between August 2000 and July 2003, all for purposes of enriching OPB members and enhancing the power, status, and position of OPB among criminal youth gangs. Le is the only defendant charged with any capital offenses. In this respect, Le is charged with two counts of murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(1) and two counts of murder in the course of a firearms offense in violation of 18 U.S.C. § 924(c)(1) and 924(j). These charges relate to a shooting at the Majestic Restaurant in Falls Church, Virginia on May 13, 2001, which resulted in the death of two individuals.

## II.[3]

Rule 8(b), Fed.R.Crim.P., provides that "[t]wo or more defendants may be charged in the same indictment or information if

Nguyen, Phu Van Ho, and Vu Huang Nguyen were not charged until the Second Superseding Indictment. Of the seven defendants indicted together in the Second Superseding Indictment, three have pled guilty. For a description of all the indictments in this case up to the Fourth Superseding Indictment, see *United States v. Cuong Gia Le, et al.,* 310 F.Supp.2d 763 (E.D.Va.2004).

2. A Fifth Superseding Indictment issued after the memorandum opinion and hence that indictment is not described therein. The differences between the Fourth and Fifth Superseding Indictment are not material to the motions resolved here.

3. Although the text of this Memorandum Opinion may refer to arguments raised by a specific defendant, those arguments are also deemed to have been made by other defen-

they are alleged to have participated in the same act or transaction." As a general matter, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). This preference is both understandable and wise for joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hayden,* 85 F.3d 153, 160 (4th Cir.1996) (citing *Zafiro,* 506 U.S. at 537, 113 S.Ct. 933). Nonetheless, there are situations where the interests promoted by joint trials are outweighed by prejudice either to a defendant or the government. Rule 14, Fed.R.Crim.P., recognizes this fact and provides:

> If it appears that a defendant or the government is prejudiced by a joinder of ... defendants ... for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The Supreme Court has made clear that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants *or* prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933 (emphasis added). In situations where the risk of prejudice is high, separate trials may be necessary, but "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.; Hayden,* 85 F.3d at 160 ("There mere showing of prejudice is not enough to *require* severance. Rather, tailoring of relief, if any, for

any potential prejudice resulting from a joint trial is left to the district court's sound discretion.") (emphasis added and internal citation omitted).

The question of severance of jointly-indicted defendants often arises where a statement of a non-testifying defendant inculpates a co-defendant. These circumstances implicate a criminal defendant's right to confront the witnesses against him, guaranteed by the Sixth Amendment, which is without doubt a specific and important trial right. *See Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *see also Crawford v. Washington,* —— U.S. ——, ——, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177, —— (2004) (noting that the Sixth Amendment's Confrontation Clause is a "bedrock procedural guarantee [that] applies to both federal and state prosecutions"). And, it is clear that "[t]he right of confrontation includes the right to cross-examine witnesses." *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). As a result, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Id.* In most situations, "a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Id.* The Supreme Court's decision in *Bruton,* however, recognized an exception to this general principle, holding that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton,* 391

---

dants to whom they may apply by virtue of each defendant, with the Court's permission,

having adopted the applicable arguments of other defendants.

U.S. at 126, 88 S.Ct. 1620. *Bruton's* important holding, however, does not automatically require severance in order to avoid this type of Sixth Amendment violation. Indeed, the Supreme Court after *Bruton,* held in *Richardson v. Marsh* that the admission of a defendant's confession, accompanied by a limiting instruction, does not violate a co-defendant's confrontation right if "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 208–11, 107 S.Ct. 1702. This is so even when other evidence properly admitted at trial otherwise links the co-defendant to the statement. *Id.*

*Richardson* left open, however, whether a statement is admissible under *Bruton* where it is redacted such that the co-defendant's name is replaced with a neutral pronoun. The Supreme Court addressed one aspect of this question in *Gray v. Maryland,* where it held that a statement that has been redacted to replace the co-defendant's name "with an obvious blank, the word 'delete,' a symbol, or similarly notif[ies] the jury that a name has been deleted," such that it is nonetheless "facially incriminatory" and "directly accusatory," comes within the *Bruton* rule and is inadmissible. 523 U.S. 185, 193–95, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). Fourth Circuit authority interpreting *Bruton, Richardson,* and *Gray,* however, goes one step further and makes clear "that a defendant's statements are admissible if the co-defendant's name is redacted and replaced with a neutral pronoun or phrase such as 'person' or 'individual,' or even 'friend,' 'partner,' 'associate,' or 'client,' provided there is reasonable assurance that use of such a neutral phrase does not result in a statement that is 'directly accusatory' or 'facially incriminatory' in the same manner as an unredacted or unrevised statement." *United States v. Smallwood,* 307 F.Supp.2d 784, 789 (E.D.Va.

2004); *id.* at n. 9 (listing Fourth Circuit cases). Moreover, the Fourth Circuit has also held that "a statement redacted such that a co-defendant's name is replaced by 'a symbol or neutral pronoun' is admissible under *Bruton* provided it is not facially incriminatory and thus is admissible, 'even though the statement's application to [the co-defendant] is linked up by other evidence properly admitted against the defendant." *Id.* at 789 & n. 10 (citing Fourth Circuit cases).

When these principles are applied here, it becomes clear that both Vu Hoang Nguyen's (a.k.a. Vincent) and Loc Tien Nguyen's out-of-court statements may be redacted so as to remedy any potential Sixth Amendment violation, and thus render unnecessary either severance or exclusion of these statements.

The government seeks to introduce portions of the statement of Vu Hoang Nguyen through the testimony of law enforcement officials. This statement, as memorialized in an FBI Form 302, contains portions that implicate other defendants and portions that do not. The four parts that implicate others are set forth here:

(1) VINCENT verbally waived his rights, agreeing to speak to the interviewing Agents. VINCENT was initially shown the name HOANG TRINH, and he denied knowing such person. VINCENT advised that he had never attempted to kill anyone nor had he ever been in possession of a firearm. VINCENT began by relating that he knew a guy, CUONG LE, who had shot three people a couple of years ago in Virginia, two of whom died. VINCENT was not familiar with the victim's names. VINCENT recalled turning over the keys to his BMW to a male named KY. The

BMW was used to drive LE out of state.[4]

(2) Upon being challenged that he was not being forthcoming thus far with the answers he had given, VINCENT then advised that what had happened was he met a group of guys at a McDonalds restaurant in Virginia. VINCENT described the group of guys as young and stated also that he had given them money if needed. VINCENT offered to assist some of them by giving them a ride. VINCENT drove his BMW with JOE, LEO, and NAM riding as passengers. Though not Asian names, VINCENT commented that JOE and LEO were Vietnamese males. VINCENT followed a white Honda Prelude which was driven by KY. Riding in KY's car were CUONG LE, TRIEU, and BAO. Ahead of KY was another Honda Prelude driven by NGUYEN NGUYEN. The three vehicles arrived in a Falls Church/Fairfax, Virginia neighborhood. NGUYEN NGUYEN parked his car by the door of HOANG TRINH's house while VINCENT and KY parallel-parked down the street.

(3) From VINCENT's BMW, LEO fired a gun (which had been passed to him from JOE), believed to be a revolver, at HOANG TRINH who was in a Toyota 4–Runner Sport Utility Vehicle. VINCENT advised that the shots did not strike TRINH but rather the window(s) or door(s) of TRINH's vehicle. There was also shooting from KY's Prelude, though VINCENT does not know who the shooter was.

(4) At a subsequent meeting with some or all of the aforementioned individuals from the three cars, VINCENT knew this to be a bad thing which had happened. VINCENT, wanting to help get CUONG LE away, turned his BMW keys over to KY.[4]

As the government no longer seeks to introduce the first and fourth portions of Vu Hoang Nguyen's statement identified above, *see supra* note 4, their redaction need not be addressed as these portions have been voluntarily excluded by the government. The remaining two portions of Vu Hoang Nguyen's statement may be redacted, consistent with *Bruton* and its progeny, as follows:

(2) Upon being challenged that he was not being forthcoming thus far with the answers he had given, VINCENT then advised that what had happened was he met a group of guys at a McDonalds restaurant in Virginia. VINCENT described the group of guys as young and stated also that he had given them money if needed. VINCENT offered to assist some of them by giving them a ride. VINCENT drove his BMW with JOE, LEO, and another individual riding as passengers. Though not Asian names, VINCENT commented that JOE and LEO were Vietnamese males. VINCENT followed a white Honda Prelude. There were four people in the white Honda Prelude, including TRIEU and BAO. Ahead of the white Honda Prelude was a second Honda Prelude. The three vehicles arrived in a Falls Church/Fairfax, Virginia neighborhood. The second Honda Prelude parked by the door of

---

4. At the hearing on this matter, the government indicated that it no longer sought to introduce parts (1) and (4) of Vu Hoang Nguyen's statement. The government confirmed this representation when it filed a new Proposed Redacted Statement of Vu Hoang Nguyen on April 12, 2004, which omitted these two parts.

HOANG TRINH's house while VIN-CENT and the white Honda Prelude parallel-parked down the street.

(3) From VINCENT's BMW, LEO fired a gun (which had been passed to him from JOE), believed to be a revolver, at HOANG TRINH who was in a Toyota 4–Runner Sport Utility Vehicle. VINCENT advised that the shots did not strike TRINH but rather the window(s) or door(s) of TRINH's vehicle. There was also shooting from the white Honda Prelude, though VINCENT does not know who the shooter was.

These redacted portions of Vu Hoang Nguyen's statements are neither directly accusatory nor facially incriminatory of any other defendants. There is no mention whatever of the identity of the occupants of the second Honda Prelude and therefore nothing in the statement itself implicates Cuong Gia Le, the defendant remaining in the case who most likely would be implicated by an unredacted version of Vu Hoang Nguyen's statement.[5]

■ Next, with respect to Loc Tien Nguyen's statement, the government seeks to introduce, through the testimony of a law enforcement agent, a synopsis of the substance of his statement, as reflected in the agent's Form 302. The unredacted version of Loc Tien Nguyen's statement includes three different versions of what occurred at the Majestic Restaurant on May 12, 2001. The government seeks to introduce only the third version, but additionally intends to elicit from the agent that Loc Tien Nguyen offered two other materially different versions of the events at the Majestic. According to the Form 302, the unredacted third version of the events at the Majestic is as follows:

Nguyen now advised that he rode with CUONG Le and Phu Ho from the Great Wall to the Majestic Restaurant in a blue car that belonged to Trieu. Nguyen advised that he was in Majestic when people said there was trouble outside. Nguyen stated that he walked outside and saw people standing around Cuong Le. Nguyen stated that Cuong Le pulled out a gun and stepped back. Nguyen stated that Cuong Le briefly lowered the gun and worked the action. Nguyen stated that Cuong Le was holding the gun in his right hand. Nguyen advised that shots then rang out and that Long Bao was shot first then Kenny Luu. Nguyen advised that he ran to the vehicle. Nguyen stated that Cuong Le and Ho also got into the car. Nguyen reiterated that Cuong Le still had the gun with him and that he put it under the front passenger seat. Nguyen advised that he drove to the Galaxy Club where he and Ho exited the vehicle. Nguyen advised that Cuong Le then drove away in the same vehicle.

The government suggests that the agent's testimony concerning the statement be redacted and modified as follows:

I interviewed Loc Tien Nguyen on May 15, 2001. During the course of the interview, he provided me (Detective C.L. Flanagan) with three materially different statements as to what he did and what he observed on May 12 and May 13, 2001 at the Majestic Restaurant.

In the third version of Nguyen's statements, Nguyen said that he drove from the Great Wall Restaurant to the Majestic Restaurant with other people in a blue car belonging to Trieu. He told me he went inside the restaurant. Loc

---

**5.** The unredacted version of Vu Hoang Nguyen's statement does not mention Phu Van Ho or Loc Tien Nguyen.

Nguyen stated that he was inside the Majestic when people said there was trouble outside. While outside the restaurant he witnessed the shooting of two individuals.[6] Loc Tien Nguyen stated that he then ran to the car, got into the driver's seat, and left with the same people with whom he had come to the Majestic.

This third statement was materially different from the first two, and the first two were materially different from one another. The statements differed in how Nguyen got to the Majestic, the people with whom he went to the Majestic and with whom he left the Majestic, and to his having witnessed the shooting. Specifically, in the first two statements Nguyen said that he had heard, but had not seen, the shootings, whereas in the third statement he admitted having seen the shooting.

The government, for reasons unrelated to *Bruton*, seeks to show that before providing the third version of the events that occurred at the Majestic on May 12, 2001, Loc Tien Nguyen offered two materially different versions of those events. By making this known to the jury, the government seeks (1) to demonstrate that Loc Tien Nguyen's three inconsistent statements show consciousness of guilt on his part, and (2) to accommodate defendants' argument that admission of Loc Tien Ngu-

yen's redacted statement of the third version, by itself, prejudices the defendants and violates their Sixth Amendment rights because it covers up inconsistencies between his third statement and the previous two statements. While the government's decision to elicit testimony about Nguyen's inconsistent statements is understandable, it is not part of the *Bruton* analysis. *Bruton* and its progeny are not concerned with whether a non-testifying co-defendant's statement contains inconsistencies. Those inconsistencies may be elicited and exploited by either party.[7] *Bruton* and its progeny stand for the proposition that the Sixth Amendment is implicated where a non-testifying defendant's out-of-court statement facially incriminates a co-defendant. Put differently, nothing in *Bruton* or its progeny suggests that the Sixth Amendment is infringed if a declarant provides inconsistent versions of events in a statement to an agent. Nor is such an argument plausible. Inconsistencies in the statement do not trigger or implicate the Sixth Amendment; again, they may be elicited and exploited by either party.

What is central, of course, is whether the statement of a non-testifying defendant, here Loc Tien Nguyen, can be redacted effectively so that it does not facially incriminate any of his co-defendants. In this regard, the government's proposed

---

**6.** The government originally proposed to redact this sentence as follows: "While outside the restaurant he saw someone pull out a gun, step back, lower the gun, work the action, and fire the gun, hitting Long Bao first and Kenny Luu second." Yet, the specific description of Cuong Le's act of shooting Long Bao and Kenny Luu might serve as evidence against Le of the deliberateness with which he shot his victims. As such, this version is arguably facially incriminatory. In these circumstances, admitting this statement without providing Le the opportunity to cross-examine the declarant arguably raises a constitutional issue. In its April 12, 2004 filing, how-

ever, the government correctly abandoned that proposal in favor of its currently proposed redaction, which excludes any reference to Le's existence and thus avoids this problem in its entirety. *See United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir.1999) ("[S]tatements that, when redacted, do not even refer to the existence of the defendant are admissible and do not require severance.").

**7.** The same is true with respect to any potential inconsistencies in Vu Hoang Nguyen's statement.

redaction of Loc Tien Nguyen's statement passes muster; it is consistent with *Bruton* and its progeny and, therefore, its use at trial does not mandate severance.

Despite defendants' suggestion to the contrary, once both Vu Hoang Nguyen and Loc Tien Nguyen's statements are properly redacted in the manner described here, severance is also not required by the Supreme Court's recent decision in *Crawford v. Washington*, — U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the Supreme Court abrogated *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), holding that the admission of an incriminating out-of-court statement by the defendant's wife to police officers violated the Sixth Amendment's Confrontation Clause, notwithstanding a lower court determination that the statement was reliable, because the wife was unavailable to testify at defendant's trial and the defendant did not have a prior opportunity to cross-examine her. *Crawford*, 124 S.Ct. at 1373–74. A crucial difference between the statement at issue in *Crawford* and the redacted statements that defendants challenge here is that the *Crawford* statement was both facially incriminating *and* introduced against the defendant challenging the statement; indeed he was the only defendant in the case. Here, after the proper redactions are made, which either eliminate the existence of a co-defendant entirely or utilize neutral pronouns, the statements the government seeks to introduce do not facially incriminate any of the defendants other than the declarants themselves, Vu Hoang Nguyen and Loc Tien Nguyen. Nor will any of the statements be introduced as evidence against the co-defendants who did not make them. A proper limiting instruction will resolve any doubts in jurors' minds concerning how these statements may be used by making clear that the statements may be considered only against the declarant. *See Richardson*, 481 U.S. at 211, 107 S.Ct. 1702 (general presumption that jurors follow court's instructions).[8] In sum, therefore, because the statements of Loc Tien Nguyen and Vu Hoang Nguyen, as redacted, do not facially incriminate any other defendants, those other defendants do not have a corresponding right to confront and cross examine either Loc Tien Nguyen or Vu Hoang Nguyen. Accordingly, the Sixth Amendment is not violated by the introduction of these properly redacted statements.

**8.** At the hearing in this matter, counsel for Loc Tien Nguyen argued that, under *Crawford*, anytime the government introduces a non-testifying defendant's statement that establishes any aspect of the case related to a redacted co-defendant, that co-defendant, under the Sixth Amendment, must have the opportunity to cross-examine the non-testifying defendant. As a result, he argues that such statements must be excluded in their entirety or severance granted. The essence of this argument is that *Crawford* overruled *Bruton* and its progeny. As such, it is unpersuasive; *Crawford* may not be read to mandate such a dramatic result. Indeed, the logic of Loc Tien Nguyen's argument would mean that even in cases like *Richardson*, where the very existence of a co-defendant is redacted entirely, the Sixth Amendment would still be violated if the statement helps establish any other ancillary fact of potential relevance to the government's case against a co-defendant. Such a revolutionary change in criminal procedure jurisprudence was not announced in *Crawford* and it cannot be assumed that the Justices intended to overrule *Richardson sub silencio*. Once the statements at issue here are properly redacted, they are facially neutral. The fact that defendants are members of a gang means that references to "another individual" points no accusatory finger at a specific defendant, as gang members, other than the defendants, could fit the bill. And, as noted, there will also be an additional safeguard in the form of a limiting instruction, which is presumed effective, cautioning jurors that a statement may only be considered as evidence against the person who made the statement. *See Richardson*, 481 U.S. at 211, 107 S.Ct. 1702.

## III.

Defendants' remaining arguments for severance also do not require severance. The noncapital defendants make essentially three arguments:(1) that they will be unfairly prejudiced by a joint trial with Le because a "death-qualified" jury [9] will be empaneled; (2) that they will be prejudiced by evidence of the murders committed by Le and, relatedly, that because some of them are minor participants, they will be prejudiced by a joint trial; and finally (3) that severance should be granted to protect their right to a speedy trial.

■ The noncapital defendants' first argument has been squarely addressed and rejected by the Supreme Court in *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). There, the Supreme Court held that use of a death-qualified jury for a joint trial in which the death penalty is sought against only one defendant does not violate the noncapital defendant's Sixth Amendment right to an impartial jury. *Id.* at 419–20, 107 S.Ct. 2906. In so holding, the Supreme Court relied on its decision in *Lockhart v. McCree*, 476 U.S. 162, 180–82, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (expressly approving the practice of using the same jury in both the guilt and penalty phases of a capital murder trial). In *McCree*, the Supreme Court made clear that

the Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.

*McCree*, 476 U.S. at 184, 106 S.Ct. 1758. Given this presupposition, and the government's "significant interests in having a joint trial," the Supreme Court in *Buchanan* found no infringement of the petitioner's right to an impartial jury. In short, binding Supreme Court precedent makes clear that a death-qualified jury poses no constitutional problem with respect to noncapital defendants in a joint trial. As a result, defendants' argument for severance in this respect is without merit.[10]

■ The noncapital defendants' second argument—that their trials must be severed from Le's trial on the ground that they will be prejudiced by evidence of the murders committed by Le—similarly fails in light of binding precedent. In *United States v. Hall*, 93 F.3d 126 (4th Cir.1996),

---

**9.** The Supreme Court has defined a "death-qualified" jury as "one from which prospective jurors have been excluded for cause in light of their inability to set aside their views about the death penalty that 'would prevent or substantially impair the performance of [their] duties as [jurors] in accordance with [their] instructions and [their] oath.' " *Buchanan v. Kentucky*, 483 U.S. 402, 407 n. 6, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) (internal quotation marks omitted).

**10.** Counsel for defendant Loc Tien Nguyen submitted a study by Robert L. Young entitled "Guilty Until Proven Innocent: Conviction Orientation, Racial Attitudes, and Support for Capital Punishment" in support of his argument that death-qualified juries are more conviction-prone than non-death-qualified juries.

That study suggests that "among white respondents a preference for convicting an innocent defendant over letting a guilty one go free is an attitude more characteristic of those who are, than those who are not, likely to be allowed to serve on capital juries." While both interesting and edifying, this study is ultimately irrelevant to the decision rendered here for the Supreme Court made clear in *Buchanan* that for purposes of its holding it assumed that similar social science studies were "both methodologically valid and adequate to establish that 'death qualification' in fact produces juries *somewhat* more 'conviction-prone' than 'non-death-qualified' juries." *Buchanan*, 483 U.S. at 415 n. 16, 107 S.Ct. 2906 (emphasis in original).

the defendant there was tried jointly with his co-conspirators, one of whom was also charged with murder. There, the defendant argued that evidence admitted against his co-defendant on the murder charge may have "inflamed the passions" of the jury, which likely found it difficult to compartmentalize such evidence and apply it to the proper defendant. *Hall,* 93 F.3d at 131. The Fourth Circuit found this argument unpersuasive, noting most importantly that "the jury was carefully instructed to give separate consideration to the charges and evidence offered against each individual defendant." *Id.* The noncapital defendants' argument here is similarly unpersuasive, for any potential prejudice to these defendants is likewise curable with a limiting instruction.

■ The noncapital defendants' related claim that some of them are minor participants in the crimes charged in the indictment and will be prejudiced if tried together with their more seriously charged co-defendants also must fail. In *United States v. Hayden,* the Fourth Circuit rejected this exact argument in a multi-defendant drug conspiracy case. 85 F.3d 153, 160–61 (4th Cir.1996). In so doing, the Fourth Circuit made clear that measures less drastic than severance, "such as limiting instructions, [can] act to cure any risk of prejudice." *Id.* at 160. Moreover, as a factual matter, it is far from evident at this stage that any of the defendants are minor participants in the criminal activities of the OPB. Defendants Vu Hoang Nguyen and Cuong Gia Le allegedly participat-

ed in the April 9, 2001 attempted murder of Wayne Trinh and all defendants (except, of course, Le) allegedly assisted Le in avoiding capture after Le allegedly shot four people, killing two of them, at the Majestic Restaurant in May 2001 and are therefore charged as accessories after the fact.[11]

Finally, the third argument for severance advanced specifically by Loc Tien Nguyen—that severance should be granted to protect the noncapital defendants' rights to a speedy trial—also fails. The Speedy Trial Act tolls the time in which a defendant must be brought to trial for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" and for "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." *See* 18 U.S.C. §§ 3161(h)(1)(F) & (h)(7).[12] There have been numerous pretrial motions in this case by all of the noncapital defendants, especially Loc Tien Nguyen.[13] Moreover, none of the noncapital defendants makes any specific numerical argument taking into account the tolling allowed by the Speedy Trial Act in arguing for severance on this basis. There is thus no basis at this time for severance on this ground.

■ Defendant Le also seeks severance of his trial from that of his noncapital co-

---

**11.** For the same reasons, Loc Tien Nguyen's motion to sever based on "markedly different degrees of culpability" must also be denied.

**12.** In this latter respect, it should be noted that the Speedy Trial Act also tolls the time in which a defendant must be brought to trial for delays resulting from any interlocutory appeals. *See* 18 U.S.C. § 3161(h)(1)(E). On April 6, 2004, defendant Cuong Gia Le filed a

Notice of Interlocutory Appeal to the Fourth Circuit from this Court's March 29, 2004 Order denying his motion to strike the government's Notice of Intent to Seek the Death Penalty.

**13.** Indeed, Loc Tien Nguyen has thus far filed approximately 23 pretrial motions during the course of this case.

defendants on several grounds. First, he argues that a joint racketeering trial of a single capital defendant with a number of noncapital defendants violates his Eighth Amendment right to a particularized sentence [14] because of "the inability of the court to control what bad acts by one defendant or another might eventually seep into the capital defendant's sentencing equation." This argument is based on pure speculation and therefore must fail for severance is not required in circumstances where a defendant merely speculates as to potential prejudice resulting from a joint trial. *See United States v. Reavis*, 48 F.3d 763, 767 (4th Cir.1995) ("The party moving for severance must establish that actual prejudice would result from a joint trial."). In addition, instructions given to the jury will remedy any risk of potential "seepage" of any co-defendants' bad acts into the jury's capital sentencing determination.

All capital cases potentially consist of two phases: a guilt phase and a penalty phase. *See* 18 U.S.C. § 3593(b). During the guilt phase, as in any joint trial, the jury will be instructed that the evidence introduced at trial is to be considered separately as to each defendant. Should Le be convicted of the capital charges against him, the jury will likewise be instructed that, with respect to evidence from the guilt phase, only evidence admissible *against Le* may be considered in the penalty phase. As already noted earlier, jurors are presumed to follow the court's instructions.[15] *See Richardson*, 481 U.S. at 211, 107 S.Ct. 1702.

■ Le next argues that "his Fifth Amendment right to notice of the basis for seeking the death penalty" is violated by a joint trial. It is clear from his briefs that Le does not argue that the government has failed to provide him with notice of its reasons for seeking the death penalty.[16] Instead, Le argues that in a joint trial he has no protection from co-defendants who

---

**14.** *See Lockett v. Ohio*, 438 U.S. 586, 602–05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that the Eighth Amendment requires "that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death") (emphasis in original).

**15.** Le also argues that because the jury's sentencing responsibility is limited to Le, this will tend to redefine the jury's sentencing task from whether Le should be sentenced to death for his actions into, as Le's brief puts it, "whether punishment should be extracted [sic] on a single individual for the crimes of a group—whether 'somebody has to pay.'" This argument is unpersuasive as it falsely assumes the jury will believe that convicted noncapital co-defendants will escape punishment for their crimes. The jury will certainly understand and be instructed that punishment for convicted noncapital co-defendants is solely a matter for the Court and that the jury should

not consider their punishment in deciding the questions of guilt or innocence of any such defendant or in deciding the appropriate punishment for Le, should he be convicted. In addition, it is also unpersuasive to argue that, because Le is the only capital defendant, the jury will likely, as Le's brief puts it, "perceive that there has been a legal, if not judicial, determination that Le [is] more culpable than his noncapital co-defendants" in a joint trial. This speculative argument, if accepted, would prevent all joint trials unless the defendants were all equally culpable. The law sensibly requires no such rule. At best, Le's argument might have some merit if some or all of his co-defendants had also been charged with murder, but the government chose not to seek the death penalty against them.

**16.** In fact, the government's Amended Death Notice is the subject of another of Le's motions and, while Le argues there that this Death Notice was untimely filed, he does not dispute that the government describes in the Notice the grounds for seeking the death penalty against Le.

are free to introduce *de facto* non-statutory aggravating factors against him in the guilt phase in an effort to defend themselves, without notice or restraint. While it may be true that Le's co-defendants "have every incentive to portray [him] as an unremorseful killer acting independently, or, worse, coercing them into assisting him with his escape," [17] it is entirely speculative, at this point, that any of Le's co-defendants will so testify or produce any evidence to that effect. Speculation is not a sound basis for severance. *See Reavis*, 48 F.3d at 767. As a result, severance is not required. Moreover, in the event any such evidence is offered during the guilt phase, Le will have the opportunity to test it through cross-examination. Through his counsel, therefore, Le can ensure "that the adversarial testing process works to produce a just result under the standards governing decision." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As a result, "the elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain'" will not be violated by a joint trial. *Skipper v. South Carolina*, 476 U.S. 1, 5 n. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (quoting *Gardner v. Florida*, 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)). In addition, and quite apart from his ability to cross-examine any co-defendants who may testify during the guilt phase, Le himself has the opportunity to testify or to present any other mitigating evidence to the jury during the penalty phase.[18] A joint trial, therefore, does not deny Le the opportunity to deny or explain during sentencing any evidence that may be offered by his co-defendants during the guilt phase. It is clear, therefore, that Le and his counsel will have both the opportunity to present evidence and comment on facts that may influence the jury's sentencing decision. *Cf. Lankford v. Idaho*, 500 U.S. 110, 127, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) ("Petitioner's lack of adequate notice that the judge was contemplating the imposition of the death sentence created an impermissible risk that the adversary process may have malfunctioned in this case."). Unlike the petitioner in *Lankford*, Le is fully aware that upon his conviction, the government will ask the jury to sentence him to death and thus he has notice of the need to prepare and present any and all arguments he can in mitigation.[19] As a result, severance is not required on this ground.

To sum up, therefore, none of the many arguments offered by defendants mandate

---

17. Defendant Loc Tien Nguyen uses this argument advanced in Le's pleading to assert that severance is required because of prejudice resulting from "the possible conflict between various defense theories and strategies at a joint trial." No possibly conflicting theories, however, are ever clearly articulated by defendants. In any event, the Supreme Court has made clear that even mutually antagonistic defenses do not mandate severance. *See Zafiro*, 506 U.S. at 540, 113 S.Ct. 933. Indeed, "[i]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.*

18. *See Skipper*, 476 U.S. at 5, 106 S.Ct. 1669 (holding that exclusion from the sentencing

hearing of the testimony petitioner proffered regarding his good behavior during the over seven months he spent in jail awaiting trial deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment, particularly when government relied on future dangerousness as an aggravating factor).

19. As an alternative to severance, Le requests that the Court fashion a discovery device to ensure that Le has notice of any "bad acts" of Le's that his co-defendants may seek to introduce into evidence. This is neither appropriate nor necessary, as Le may seek to exclude such evidence on various grounds, including Rules 402 and 403, Fed.R.Evid., if warranted.

that severance be granted at this time. Defendants have failed to show "that a joint trial [will] compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. As a result, the trials of Cuong Gia Le, Loc Tien Nguyen, Phu Van Ho, and Vu Hoang Nguyen—all of whom were indicted together—may proceed together

## IV.

Accordingly, the following motions must be denied:

(1) Defendant Cuong Gia Le's Motion to Sever Trial of All Defendants and Second Motion to Sever Trial of All Defendants;

(2) Defendant Vu Hoang Nguyen's Motion for Relief from Prejudicial Joinder;

(3) Defendant Phu Van Ho's Motion to Sever Trial;

(4) Defendant Loc Tien Nguyen's Supplemental Filing Regarding Severance and to Adopt and Conform the Motion by Nguyen Nguyen Regarding Severance; and

(5) Defendant Phu Van Ho's Supplemental Motion to Sever Trial or to Bar Government's Synopsis of Co-defendants' Statements.[20]

An appropriate order will issue.

---

**20.** Originally, defendant Nguyen Nguyen's Motion for Relief from Prejudicial Joinder, defendant Ky Truong Quach's Motion for Relief from Prejudicial Joinder, and defendant Nguyen Nguyen's Motion for Relief from Prejudicial Joinder and Unconstitutional Joinder were also before the Court. Since filing these motions, however, both Nguyen Nguyen and Ky Truong Quach have pled guilty to the charges against them, rendering these motions moot.