

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-11-2005

# Mason v. Kyler

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4724

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Mason v. Kyler" (2005). *2005 Decisions*. Paper 439.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/439

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

03-4724
_____

LARRY MASON,

Appellant

v.

KENNETH D. KYLER; THE DISTRICT
ATTORNEY OF THE COUNTY OF ALLEGHENY;
THE ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

(D.C. Civ. No. 03-cv-00712)
District Judge:  The Honorable Joy F. Conti

Argued July 14, 2005


Before:  ALITO, VAN ANTWERPEN, and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Filed: October 11, 2005)


_____

OPINION
_____

Cheryl J. Sturm, Esq. (Argued)
387 Ring Road
Chadds Ford, PA   19317

Counsel for Appellant

Rebecca D. Spangle (Argued)
Assistant District Attorney
Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA   15219

Counsel for Appellee

PER CURIAM:

This is an appeal from a District Court order denying a state prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  We will affirm.

I.

Larry Mason was tried in state court for the first-degree murder of Robert Moye and for other offenses.  The evidence at trial showed that Robert Moye was killed as part of a "turf war."  On the day of the shooting, Robert Moye and his brother, Love Moye, entered the Westgate area of the McKees Rocks section of Pittsburgh.  Robert Moye had a gun, and Love Moye was carrying a bat.  A group of young men from the Westgate area confronted them, but no one was injured at that time.  Mason, his co-defendant Kordrese Taylor, and numerous other young men later went to an apartment where they found Robert Moye sitting on a couch with his girlfriend.  Robert Moye was then shot and killed, and Mason was identified at trial as the shooter by two witnesses, Gemale Vaughn,

2

who was one of the men who went to the apartment, and Shaina Ballard, who was present in the apartment.

Mason was tried together with Kordrese Taylor, another member of the group that went to the apartment. Taylor did not take the stand, but the prosecution was permitted to introduce an out-of-court statement in which Taylor acknowledged that he had gone to the apartment but claimed that he had not known that Robert Moye would be shot. In the original version of the statement, Taylor identified Mason as the shooter, but the trial court ordered that the statement be redacted and that Mason's name be replaced with the phrase "a male not from Pittsburgh."

Mason was found guilty and sentenced to life imprisonment. On appeal, the Superior Court affirmed and rejected Mason's argument that Bruton v. United States, 391 U.S. 123 (1968), was violated by the admission of Taylor's redacted statement. The Superior Court wrote:

> The admission of the redacted statement in this case did not violate Bruton. The statement, as redacted, does not tend to identify appellant as a participant in the crime. All specific references to appellant were removed from the statement. The three eyewitnesses to the shooting stated that nine or ten black males came into [the] apartment before Robert Moye was shot. Absolutely no evidence was presented which stated that appellant was not from Pittsburgh. We agree with the trial court that "[t]o suggest that the jury could, or would, engage in a laborious process of elimination to determine that [appellant] was the only person in a roomfull [sic] of young men that was not from Pittsburgh, is highly speculative, at best." . . . Thus, the redacted stement did not tend to identify appellant and it was not powerfully incriminating, and the

3

trial court did not err in its redaction or admission.

App. 101-02.  The Pennsylvania Supreme Court denied the petition for allowance of appeal.  Commonwealth v. Mason, 542 Pa. 663 (1995) (table).

In 1996, Mason filed a pro se petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), and in 2000 Mason's counsel filed an amended PCRA petition alleging, among other things, that the Commonwealth had suppressed evidence that Ballard had been threatened.  In support of this argument, Mason relied on an affidavit executed by Ballard in January 2000, in which she stated that she was "in fear for [her] personal safety because of threats from a friend of Gemale Vaughn" and that she had provided this information to county detectives and to the prosecutor and had been placed under protection.  App. 58.  The amended PCRA petition asserted that evidence of the threat was material under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), because it could have been used by defense counsel for impeachment.

The Court of Common Pleas dismissed the motion without a hearing, and a divided panel of the Superior Court affirmed.  The Court observed that the affidavit "fail[ed] to show that [Ballard's] testimony was affected in any material way as a result of the threat to her safety" and that she had not shown that there was a reasonable probability that the outcome of the trial would have been different if the evidence had been provided to the defense.  App. 124.  The Pennsylvania Supreme

Court denied the petition for allowance of appeal. Commonwealth v. Mason, 572 Pa. 764 (2003) (table).

Mason then filed the current federal habeas petition. The District Court denied the petition, but our Court issued a certificate of appealability, concluding that jurists of reason could disagree

> with respect to Appellant's claims pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Bruton v. United States, 391 U.S. 123 (1968): (1) that the trial court violated his Sixth Amendment right of confrontation when it permitted the jury to hear a redacted version of a non-testifying co-defendant's statement and (2) that the Commonwealth committed a Brady violation by failing to disclose that a Commonwealth witness had been threatened.

## II.

In this appeal, Mason argues that the trial court's admission of Kordrese Taylor's redacted confession violated the Bruton line of cases. In Bruton, the Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated by the admission of a non-testifying codefedant's confession naming and incriminating the defendant, even when the court gives a proper limiting instruction to the jury. A later case, Richardson v. Marsh, 481 U.S. 200 (1987), clarified the scope of Bruton by holding that the Confrontation Clause is not offended when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211. In Gray v. Maryland, 523 U.S. 185 (1998), the Court held that a confession that simply replaces a defendant's name with an obvious blank space or an obvious indication of deletion (such as the word "deleted" or a symbol) is

5

tantamount to the type of unredacted statements proscribed by Bruton. Id. at 197.

Our Court has examined Gray's implications in United States v. Richards, 241 F.3d 335 (2001), and Priester v. Vaughn, 382 F.3d 394 (3d Cir. 2004). In those cases, we have heeded the distinction between redacted statements that clearly convey the message that the defendant was being implicated (Richards) and those in which the possibility that the jury received such a message is speculative and slight (Priester).

In this case, we hold that the state court's rejection of petitioner's Bruton argument was not "contrary to" and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The state court identified and reasonably applied the relevant Supreme Court precedents. The phrase "a male not from Pittsburgh" was not a conspicuous redaction akin to a blank space or symbol, and the jury may not have even realized it was a redaction. Moreover, it was far from obvious that Mason was the "male not from Pittsburgh." Like Priester, Mason's case involved a large group of perpetrators, all men, and the redacted statement is unclear as to who was present at the time of the shooting. The evidence in the record did not show that Mason was not from Pittsburgh, and Mason has not called to our attention evidence in the record showing that all of the other men who were present in the apartment were Pittsburgh residents. We also note that the latter part of Detective Kelly's testimony describing how Taylor remembered the shooting – "a male who was standing behind him reached

6

around with a chrome revolver and began firing" – could well have conveyed the impression that Taylor could not identify the shooter.

Mason seizes upon a comment made by the prosecutor in closing argument, and Mason interprets the comment as suggesting that Taylor's statement identified Mason as the shooter. However, we are not convinced that this statement is enough to show that the state court's application of the controlling Supreme Court precedents was unreasonable. The statement was fleeting and can be read to mean that Kordrese Taylor's statement corroborated the fact that Robert Moye was attempting to flee at the time of the shooting, not that Mason was the shooter. In addition, the statement of course was not evidence, see Priester, 382 F.3d at 399-400; the jury was instructed that the lawyers' comments were not evidence; and we must generally presume that jurors follow a judge's instructions. See Francis v. Franklin, 471 U.S. 307, 324-325, n.9 (1985). In sum, we see no ground for granting habeas relief on this claim under the governing standards of review.[1]

---

[1] Mason argues briefly that the admission of Taylor's statement violated Crawford v. Washington, 541 U.S. 36 (2004), which bars the prosecution from introducing out-of-court testimonial statements unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. In advancing his Crawford argument, Mason makes no attempt address the obvious procedural hurdles – exhaustion, procedural default, and non-retroactivity – that such an argument would have to surmount. However, assuming for the sake of argument that these obstacles could somehow be overcome, see 28 U.S.C. § 2254(b)(2), the argument fails on the merits. See United States v. Le, 316 F. Supp. 2d 330, 338 (E.D.Va. 2004); Concepcion v. United States, 328 F. Supp. 2d 372, 374 (E.D.N.Y. 2004); Commonwealth v. Whitaker, 878 A.2d 914, 922 (Pa. Super. Ct. 2005).

III.

Mason argues that the Commonwealth violated <u>Brady</u> when it failed to disclose that a friend of witness Gemale Vaughn threatened witness Shaina Ballard. Mason relies on two affidavits by Ballard. In the first affidavit, as previously noted, Ballard stated that she had been threatened by a friend of Gemale Vaughn, but she did not impugn the accuracy of her trial testimony. After the Superior Court found this affidavit insufficient to establish materiality in part because it did not suggest that Ballard's trial testimony had been affected by the alleged threat, Ballard executed a second affidavit in which she stated that, contrary to her trial testimony, she actually could not identify the shooter. This affidavit was not presented to the state courts, and the District Court did not expand the record to include this affidavit. On the contrary, the Magistrate Judge ruled, <u>see</u> App. 104, that because the new fact asserted in the second affidavit could have been developed in the state courts, Mason was barred from attempting to prove the new fact in federal court. <u>See</u> 28 U.S.C. § 2254(e)(2); <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1 (1992).

We agree with the Magistrate Judge that consideration of the second affidavit is not warranted. We note that Mason has made no attempt to address the Magistrate Judge's reasoning, and we thus deem any objection to the Magistrate Judge's holding on this point to have been waived. In any event, it appears that the Magistrate Judge's analysis was correct.

8

We thus consider whether the Superior Court rendered a decision that was either contrary to or involved an unreasonable application of Supreme Court precedent when it held that the facts alleged in the first affidavit were not material for Brady purposes.

"[T]o establish a Brady violation requiring relief, a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir. 2004). As we further explained in Lambert,

> '[A] showing of materiality does not require a demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.' Kyles [v. Whitney, 514 U.S. 419, 435 (1995)]. Rather, '[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' [United States v.] Bagley 473 U.S. [667,] 682, 105 S.Ct. 3375. In other words, the relevant question is: 'when viewed as a whole and in light of the substance of the prosecution's case, did the government's failure to provide . . . [the] Brady impeachment evidence to the defense prior to the [ ] trial lead to an untrustworthy guilty verdict . . . ?' See [United States v.] Pelullo, 105 F.3d [117,123 (3d Cir. 1997)]; see also Banks [v. Dretke, 540 U.S. 668, 698-99 (2004)].

387 F.3d at 253 (alterations of quoted material in original).

We hold that the Superior Court's decision was not contrary to Supreme Court case law on materiality. Contrary to the view expressed in the Superior Court dissent, the majority did not hold that Mason was required to prove by a preponderance of the evidence that the verdict would have been different if the evidence of the threat had

9

been disclosed.  See App. 135.  Such a holding would have been error.  See Kyles, 514 U.S. at 434.  Instead, the majority provided the following correct definition of materiality:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome.

Appellant's App. at 124 .

We recognize that the Superior Court majority later stated that the defense had to show by a preponderance of the evidence that "there was a 'reasonable probability' that the outcome of the proceedings would have been different."  App. 124.  However, the Superior Court's use of the phrase "a preponderance of the evidence" in this context was superfluous (we see no distinction between establishing a reasonable probability by a preponderance and simply establishing a reasonable probability) and was thus of no consequence.

Although the question is close, we also hold that the Superior Court's application of the controlling Supreme Court precedents was not unreasonable.  If the prosecution failed to disclose the evidence of the threat to the defense,[2] its conduct was certainly ill-advised and risky.  In addition, we agree with Mason that defense

---

[2]At oral argument, counsel for the appellees suggested that the evidence may have been turned over, but counsel has not provided any record support for this assertion, and therefore we follow the Superior Court in proceeding on the assumption that the evidence was not disclosed.

10

counsel could have used the evidence of the threat to impeach Ballard by suggesting that the threat provided a motive for her to implicate Mason rather than Vaughn, who was also present in the apartment at the time of the shooting. However, Ballard was not the only witness who identified Mason, and in light of the totality of the evidence, we cannot say that the Superior Court majority's conclusion was unreasonable. We might not reach the same conclusion if we were considering this question de novo, but under the standard set out in 28 U.S.C. § 2254(d)(2), we hold that habeas relief on this claim is not warranted.

IV.

For the reasons set out above, we will affirm the order of the District Court.