**UNITED STATES of America**

v.

**Tyrone SMALLWOOD Thomas Edward Smith, Jr.**

**No. CRIM.A. 03–245–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 1, 2004.

Brian D. Miller, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Thomas Abbenante, Washington, DC, Lana Manitta, Marin, Arif, Petrovich & Walsh, Springfield, VA, Ivan Darnell Davis, Office of the Federal Public Defender, Frank Salvato, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue on a pretrial motion for severance in this prosecution of two defendants for murder and use of a firearm while engaged in a drug conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 924(c) & (j), is whether a non-testifying defendant's statements that directly inculpate a co-defendant, but are redacted to substitute a neutral phrase or pronoun such as "another person" or "another individual" for the co-defendant's name, may be admitted at trial under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny.

For the reasons stated from the bench and elucidated here, severance is neither required nor appropriate; the statements may be adequately redacted, consistent with *Bruton*, to remove any directly accusatory or facially incriminatory reference to the co-defendant.

### I.

Defendants Tyrone Smallwood and Thomas Edward Smith, Jr. were jointly indicted and face trial for the February 11, 1996 murder of Conrad Shelton in Washington, D.C., a murder they allegedly committed while engaged in drug trafficking, in violation of 21 U.S.C. § 848(e)(1)(A). Both defendants are also charged with the use of a firearm in connection with a drug conspiracy in violation of 18 U.S.C. § 924(c) and (j) and Smith is additionally charged with conspiring to traffic in drugs in violation of 21 U.S.C. § 846.[1] For a more detailed statement of the facts underlying the alleged drug conspiracy and murder of Shelton, see *United States v. Smallwood*, 293 F.Supp.2d 631 (E.D.Va. 2003) (denying defendants' motion to transfer venue, denying defendants' motion to dismiss § 924(c) charge, and deferring ruling on defendants' motion to suppress statements pending further hearing). Only the facts pertinent to the defendants' motion to sever need be recounted here.

According to the superseding indictment,[2] Smallwood and Smith were members of a large drug trafficking conspiracy that manufactured and distributed drugs, chiefly crack cocaine, in the District of Columbia, Maryland, Virginia, and elsewhere between 1993 and 1999. Defendants were arrested for their involvement in the drug conspiracy during a November 4, 1996 Federal Bureau of Investigation ("FBI") search of defendants' residence in Hyattsville, Maryland. Shortly after his arrest, Smallwood pled guilty to his involvement in the drug conspiracy in the United States District Court for the District of Columbia on November 14, 1996. Smith was released after being detained briefly owing to confusion regarding his identity. Also, since 1996 more than a dozen of defendants' co-conspirators have been successfully prosecuted in this district for their roles in the drug conspiracy.[3] And, one co-conspirator, Anthony Brown, pled guilty to aiding and abetting the murder of Shelton while engaged in a crack cocaine distribution conspiracy in violation of 18 U.S.C. § 848(e)(1)(A). *See United States v. Brown*, Criminal No. 03–612–A

---

1. Smallwood is not charged with the drug conspiracy offense because he pled guilty to this offense in the United States District Court of the District of Columbia in November 1996. *See United States v. Smallwood*, Criminal No. 96–341–02 (D.D.C. November 14, 1996) (Plea Agreement).

2. *See United States v. Smith, Smallwood*, Criminal No. 03–245–A (E.D.Va. August 2003) (Superseding Indictment).

3. *See, e.g., United States v. Jerry Booker*, Criminal No. 98–452–A (E.D.Va. January 21, 1999) (Plea Agreement); *United States v. Walter Fleming*, Criminal No. 98–452–A (E.D.Va. March 5, 1999) (Plea Agreement).

(E.D.Va. December 30, 2003) (Plea Agreement).

Beginning in 2001, more than five years after Shelton's murder, FBI agents suspected that Smith was involved in the drug conspiracy and murder. As a consequence, Special Agent John J. Norton of the FBI's Washington Field Office went to Smith's place of employment in Lanham, Maryland on July 24, 2001 and called Smith at work to ask for an opportunity to speak to him. As a result of this request, Smith left work to speak with Agent Norton briefly in the parking lot and during that short conversation, Smith agreed to meet Agent Norton at the Washington Field Office later that afternoon to answer additional questions. At approximately four o'clock that afternoon, Smith arrived at the Washington Field Office to speak with Special Agents Norton and John Guandolo.

During his interview with Agents Norton and Guandolo on July 24, 2001, Smith provided background information regarding his longstanding relationship with Smallwood and defendants' involvement in the alleged drug conspiracy. Specifically, Smith stated that during the 1990s he received drugs from Smallwood and another supplier, Walter Fleming, and then sold these drugs to others. Smith also stated that he and Smallwood maintained two residences together—one at 50 49th Street, Washington, D.C. and another in Hyattsville, Maryland—which Smith rented under the alias "Anthony Young," and where defendants operated their drug business.

Furthermore, Smith stated that he knew Shelton prior to Shelton's 1996 murder because Shelton had performed odd jobs for Smith and Smallwood in exchange for drugs and money. Smith denied Agent Norton's suggestions that he, Smith, and Smallwood had murdered Shelton, but became noticeably emotional in response to Agent Norton's questions regarding Shelton's murder and conceded that he had "roughed up" Shelton on one occasion because he and Smallwood suspected that Shelton was responsible for telling others the location of defendants' apartment allowing those individuals to rob defendants of money and drugs. In response to Agent Norton's questions regarding a gunshot injury to Smallwood's foot that the government alleges occurred during Shelton's murder, Smith stated that he knew Smallwood had been shot in the foot in the past and that Smallwood "always had problems with his feet."

When Agent Norton reiterated later in the interview that Smith and Smallwood were suspected in Shelton's murder, Smith again became emotional and tearful and denied involvement in the murder.[4] Smith then requested that the agents schedule a meeting with an Assistant United States Attorney in the Eastern District of Virginia so that Smith could "straighten out the story and clarify what happened when Conrad was killed and what I saw." A meeting was scheduled with the AUSA for the following day. Smith did not show up at the scheduled meeting.[5]

The government intends to offer at trial Agent Norton's testimony regarding Smith's statements during the July 24, 2001 interview. Defendants, in turn, move to sever their joint trial on the ground that Smith's statement directly incriminates Smallwood such that, in the event Smith elects not to testify, the admission of Smith's statement would violate Small-

---

**4.** Specifically, Smith stated, "I'm definitely guilty of a drug conspiracy and dealing drugs in the past but, I wasn't one of the shooters."

**5.** Agent Norton memorialized Smith's statements during the July 24 interview in a six page FBI "302" report on July 25, 2001.

wood's Sixth Amendment right to confrontation. *See Bruton,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. Alternatively, defendants argue that, in the event defendants are tried jointly, Smith's statements that refer to Smallwood must be either (i) excluded in full or (ii) redacted to omit any reference to Smallwood and to his existence, in accordance with *Bruton* and its progeny. *See Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). In response, the government contends that severance is not appropriate under *Bruton* and its progeny, but it does not dispute that Smith's statement must be appropriately redacted. In fact, the government has offered to instruct Agent Norton to replace Smallwood's name with the words "person," "friend," or "associate" when he testifies. Defendants reject this offer, arguing that controlling authority makes clear (i) that neutral pronoun substitutions, such as those suggested by the government, do not remove the statement from *Bruton's* scope and (ii) that all references to Smallwood's existence must be eliminated because other independent evidence admitted at trial, namely evidence regarding Smallwood's foot injury, will make clear that Smith referred to Smallwood in his statement.[6] Thus, at issue here is whether Smith's statement to Agent Norton may be adequately redacted such that its admission at a joint trial will not violate Smallwood's Sixth Amendment right of confrontation.

## II.

■ The general rule, especially in conspiracy cases, is that defendants indicted together, as here, should be tried together. *See United States v. Najjar,* 300 F.3d 466, 473 (4th Cir.2002) (stating that the Supreme Court has indicated that "there is a preference in the federal system for joint trials of defendants who are indicted together" (citing *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993))). Yet, there may be circumstances in which trying co-conspirators together is not appropriate, and in such circumstances, Rule 14, Fed.R.Crim. P., empowers trial courts to order severance. *See* Rule 14, Fed.R.Crim.P. ("If the joinder of offenses or defendants in... a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). And in this regard, settled authority makes clear that severance motions are "committed in the first instance to the sound discretion of the trial court." *See Person v. Miller,* 854 F.2d 656, 665 (4th Cir.1988).

■ One circumstance requiring severance is where the statement of one non-testifying defendant to be admitted at trial directly inculpates another defendant *See Bruton,* 391 U.S. at 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This is so, as *Bruton* and its progeny make clear, because admitting such a statement violates the co-defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment, even when the statement is accompanied by a limiting instruction that the statement should not be used to determine the guilt or innocence of the co-defendant. *See Bruton,* 391 U.S. at 137, 88 S.Ct. 1620 ("Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a

---

**6.** It is also likely that independent evidence that Smallwood and Smith shared residences in the District of Columbia and Hyattsville, Maryland, will make clear to the jury that Smith's statement regarding a "person" or "individual" with whom he shared a residence refers to Smallwood.

joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination.").[7]

While *Bruton* makes clear that "facially incriminatory" statements must be excluded, it left open whether and what kind of redactions of a defendant's statement might obviate a Sixth Amendment violation. Thus, the Supreme Court revisited *Bruton* on two later occasions to determine the scope of the rule announced in that case with regard to redactions. In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176, the Supreme Court held that the admission of a defendant's confession, accompanied by a limiting instruction, does not violate a co-defendant's confrontation right if "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 208–11, 107 S.Ct. 1702. And this is so even when other evidence properly admitted at trial otherwise links the co-defendant to the statement. *See id.* In other words, under *Richardson*, a defendant's statement that is redacted to eliminate the co-defendant's name and any reference to his or her existence does not run afoul of *Bruton* simply because there is other evidence in the case that links the co-defendant to the statement.[8]

Notably, *Richardson* raised, but did not resolve, another question left open in *Bruton*, namely whether a statement redacted such that the co-defendant's name is replaced with a neutral pronoun, such as "person," "individual," or "associate," may be admitted under *Bruton*. *See Richardson*, 481 U.S. at 208–09, 107 S.Ct. 1702; *Bruton*, 391 U.S. at 134 n. 10, 88 S.Ct. 1620. In *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294, the Supreme Court addressed one aspect of this question, concluding that a statement that has been redacted to replace the co-defendant's name "with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted," such that it is nonetheless "facially incriminatory" and "directly accusatory," comes within the *Bruton* rule and is inadmissible. *Id.* at 193–95, 118 S.Ct. 1151. *Gray* did not, however, address whether redactions that replace the co-defendant's name with a neutral pronoun, instead of a deletion or blank space, might, in some circumstances, be constitutionally permissible.

■ Fourth Circuit authority interpreting *Bruton*, *Richardson*, and *Gray* teaches that a defendant's statements are admissible if the co-defendant's name is redacted

---

**7.** *Bruton* overruled *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), in which the Supreme Court had previously held that a limiting instruction regarding the jury's use of a non-testifying defendant's confession that directly inculpates a co-defendant was sufficient to protect a co-defendant's confrontation right. *See id.* at 233, 77 S.Ct. 294.

**8.** It is important to note that for *Bruton* purposes the Supreme Court in *Richardson* drew a distinction between (i) statements that are directly inculpatory and (ii) statements that have "inculpatory value" simply because the government has offered other evidence link-

ing the co-defendant to the confession. *See Richardson*, 481 U.S. at 205–06, 107 S.Ct. 1702. In *Richardson*, the confession at issue was redacted to omit all references to the co-defendant and indeed all references to any other individual participating in the crime. *See id.* at 203, 107 S.Ct. 1702. Nonetheless, the co-defendant's own testimony provided sufficient evidence for the jury to link her to the confession and the prosecutor in fact linked the co-defendant to the confession during closing argument. *Id.* at 205–06, 107 S.Ct. 1702. Yet, significantly, the Supreme Court refused to extend *Bruton* "to confessions incriminating by connection." *Id.* at 209, 107 S.Ct. 1702.

and replaced with a neutral pronoun or phrase such as "person" or "individual," or even "friend," "partner," "associate," or "client," provided there is reasonable assurance that use of such a neutral phrase does not result in a statement that is "directly accusatory" or "facially incriminatory" in the same manner as an unredacted or unrevised statement.[9] Moreover, the Fourth Circuit has extended *Richardson*, holding that a statement redacted such that a co-defendant's name is replaced by "a symbol or neutral pronoun" is admissible under *Bruton* provided it is not facially incriminatory and thus is admissible, "even though the statement's application to [the co-defendant] is linked up by other evidence properly admitted against the defendant."[10] To be sure, it is also clear that there may be circumstances where no redaction will serve to obviate the Sixth Amendment violation; in these circumstances, the reference to the co-defendant's name as well as his existence must be redacted. In yet other circum-stances, no redaction or neutral pronoun substitution will suffice to eliminate a Sixth Amendment violation, in which event the statement must be excluded or a severance ordered. Thus, the question presented here is whether, given these principles, Smith's statement may be adequately and appropriately redacted such that it is properly admissible at defendants' joint trial without violating Smallwood's Sixth Amendment right of confrontation.

### III.

These principles, applied here, make clear that severance is not required because Smith's statement may be redacted consistent with the *Bruton* rule either (i) by eliminating Smallwood's name and substituting a neutral pronoun or phrase in some instances and, (ii) in other instances, where necessary, by eliminating both Smallwood's name and any reference to his existence or to the existence of "another person." A close analysis of Smith's state-

---

9. *See United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir.1999) ("Given the neutral phrases used in the statements ["another person," "another individual," or "a guy in New York"] the defendants were not prejudiced in any way."); *United States v. Vogt*, 910 F.2d 1184, 1191–92 (4th Cir.1990) (finding that *Bruton* does not bar admission of a redacted statement that replaces defendant's name with a symbol or neutral pronoun, such as "client"); *see also United States v. Smith*, 43 Fed.Appx. 529, 533, 2002 WL 482561 (4th Cir.2002) (stating that substituting a co-defendant's name with "friend" does not violate *Bruton*); *United States v. Holmes*, 30 Fed. Appx. 302, 307–08 (4th Cir.2002) (finding that testimony regarding defendant's statement which referred to a co-defendant as "partner" did not violate *Bruton*); *United States v. Smith*, 1999 WL 25560, at *2, 172 F.3d 865 (4th Cir.1999) (finding that "the prosecution's use of 'associate' or 'associates' [to replace references to specific individuals] does not violate the rule in Bruton"). The defendants in *Smith*, 172 F.3d 865, and *Smith*, 172 F.3d 865, are unrelated to this defendant Smith.

While the rule in this circuit precludes citation of unpublished decisions in appellate proceedings, such decisions are routinely cited and relied on by counsel in district court proceedings. Although unpublished decisions are not binding precedent in this circuit, they are occasionally cited here because they involve facts particularly apposite to this case or because they contain statements that are especially apt in this case even if they merely restate already settled circuit precedent. *See* Local Rule 36(c), Federal Rules of Appellate Procedure, United States Court of Appeals for the Fourth Circuit.

10. *Vogt*, 910 F.2d at 1191–92; *see also Holmes*, 30 Fed.Appx. 302, 307–08 (holding that the substitution of a neutral pronoun did not violate Bruton "even if [the statement] becomes incriminating when linked with other evidence"); *United States v. LaFrance*, 966 F.2d 1445, 1992 WL 130179, at *6 n. 3 (4th Cir.1992) (Luttig, J., concurring) ("Our circuit has extended the holding in Marsh to allow the admission of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun.").

ment as reflected in Agent Norton's FBI report makes clear that in certain instances the substitution of Smallwood's name with a neutral pronoun, such as "person" or "individual," results in a redacted statement that is neither directly accusatory nor facially incriminatory of Smallwood and hence admissible under *Bruton* and its progeny in this circuit. Nonetheless, in other instances, substituting a neutral pronoun in place of Smallwood's name does not eliminate the accusatory and incriminatory nature of the statement; hence, in these instances both Smallwood's name and any reference to the existence of Smallwood or "another person" must be excluded to avoid infringing Smallwood's Sixth Amendment confrontation right.

At the conclusion of the hearing on this issue, a bench ruling issued applying the *Bruton* principles elucidated here to each reference to Smallwood in Smith's statement to Agent Norton, as reflected in the latter's 302 report.[11] At trial, the government elected to elicit from Agent Norton eleven statements by Smith that included a reference to Smallwood.[12] Seven were held admissible under *Bruton* and its progeny after the statements were redacted such that the references to Smallwood were replaced with a neutral pronoun because the resulting redacted statements were not directly accusatory or facially incriminatory of Smallwood and thus did not infringe his Sixth Amendment confrontation right. In the case of these seven statements, other trial evidence showed that defendants drug conspiracy involved many conspirators, not just Smith and Smallwood, and therefore, the jury would not be invited to conclude that the neutral pronoun referred to Smallwood. *See Smith,* 1999 U.S.App. LEXIS 857, at *6 (finding that the use of the neutral pronoun "associate" was appropriate under *Bruton* because "[t]estimony in the case indicated that at least three persons, and probably more, participated in the attack...."). The seven statements, and the reasons for the adequacy of the substitution of a neutral pronoun, are as follows:

> (1) Smith stated that he mainly dealt in powder and crack cocaine while "hanging out with known drug dealers such as Smallwood and Smallwood's cousin, Walter Fleming, also known to him as 'Biggums'."

Because there were many members of the alleged drug conspiracy, replacing the reference to Smallwood with a neutral pronoun was sufficient to eliminate the directly accusatory and facially incriminatory nature of the statement. Thus, Agent Norton may testify that Smith dealt powder and crack cocaine while hanging out with other drug dealers such as Fleming. This substitution is adequate even though other evidence in the case may otherwise link Smallwood to the drug conspiracy. *See Richardson,* 481 U.S. at 208–11, 107 S.Ct. 1702; *Vogt,* 910 F.2d at 1191–92.

---

11. Also worth noting is that several of Smith's statements contained in the 302 report that referred to Smallwood were excluded on non-*Bruton* grounds, for example, lack of probativeness, relevance, or foundation. These rulings are not reviewed here.

12. The government elected to abandon at trial at least three portions of Smith's statement that referred to Smallwood that were the subject of the defendants' motion and the bench ruling: (1) Smith's statement that he and Smallwood worked part-time as lifeguards for the Washington, D.C. Department of Recreation; (2) Smith's statement that he, Smallwood, and another friend, Melvin Brown, were in Chicago at a basketball game on the day that Shelton was murdered; and (3) Smith's statement that he wanted to meet with the AUSA to determine whether his cooperation would benefit him if "he were formally charged with his past drug dealing activities and associations with Smallwood." Accordingly, these portions of Smith's statement are not addressed here.

(2) Smith also stated that he and Smallwood "obtained an apartment together located at 50 49th Street, N.E., Washington, D.C.," where Smith, Smallwood, and Fleming often cooked crack cocaine and in general, operated their drug business.

As above, because Smith allegedly conspired with many others, replacing the reference to Smallwood with a neutral pronoun eliminates the accusatory and incriminatory nature of the statement. Thus, Agent Norton may testify that Smith rented an apartment at 50 49th Street with another individual where he, Fleming, and others cooked crack cocaine and operated their drug business. This testimony is admissible even though the government intends to offer other evidence that Smith and Smallwood shared the 49th Street apartment.[13]

(3) Smith stated that Smallwood and Fleming, with whom Smith was involved in drug dealing, "dealt in kilogram quantities of powder and crack cocaine," while Smith generally sold only two or three ounce quantities at a time. Smith also stated that he typically "re-directed" drugs that he had obtained from Smallwood, who purchased drugs from Fleming. After selling the drugs to his buyers, Smith reimbursed Smallwood.

Because the alleged drug conspiracy involved many conspirators, replacing Smallwood's name with a neutral pronoun is sufficient to eliminate its accusatory and incriminatory nature. Thus, Agent Norton may testify that Smith stated (i) that he sold two or three ounce quantities of cocaine while Fleming and others with whom he associated dealt kilogram quantities and (ii) that he "re-directed" drugs that he obtained from others and that after doing so, reimbursed those who had fronted him the drugs.[14]

(4) Smith stated that he "often drove Smallwood in his [Smith's] Land Cruiser to various places to complete drug deals."

Because Smith conceivably could have driven several other co-conspirators in his car to complete drug deals, it is sufficient to replace the reference to Smallwood with a neutral pronoun such that Agent Norton may testify that Smith drove others in the Land Cruiser to complete drug deals because this redacted testimony is not directly accusatory or facially incriminatory of Smallwood

(5) Smith stated that "during the summer of 1996, [he] and Smallwood moved from their 49th Street apartment to a single family home located in Hyattsville, Maryland," which Smith leased under his alias, "Anthony Young."

Again, because Smith and Smallwood conspired with several others, replacing the reference to Smallwood in the statement with a neutral pronoun eliminates the accusatory and incriminatory nature of the statement. Thus, Agent Norton may testify that Smith moved with another person from the 49th Street apartment to a residence in Hyattsville, Maryland. This testimony is admissible even though the gov-

13. When he testified at trial, Agent Norton did not substitute a neutral pronoun in the portion of Smith's statement in which Smith said that he and Smallwood shared the 49th Street apartment, but instead omitted the reference to Smallwood entirely. There was, however, other evidence admitted at trial that Smith and Smallwood shared the 49th Street apartment. Yet, Agent Norton testified that Smith admitted that he (Smith) and other individuals operated their drug business out of the 49th Street apartment.

14. Agent Norton only testified to a portion of this statement. That is, he testified that some of the individuals with whom Smith was dealing drugs sold kilogram quantities of cocaine. Agent Norton did not, however, testify that Smith obtained the cocaine he sold from Smallwood or "any other individual."

ernment may admit other evidence to show that Smith and Smallwood shared the Hyattsville residence.[15]

(6) Smith stated that the money and drugs seized from the Hyattsville, Maryland residence at the time of the November 1996 FBI raid belonged to Smallwood.

It is sufficient to replace this reference to Smallwood with a neutral pronoun such that Agent Norton may testify that Smith stated that the money and drugs seized during the FBI raid did not belong to him, Smith, because this testimony is not directly accusatory or facially incriminatory of Smallwood.[16]

(7) Smith stated that he knew Conrad Shelton because Shelton used to do odd cleaning and repair jobs for Smith and Smallwood at their 49th Street apartment, including washing their cars, for which Smith and Smallwood paid Shelton with cocaine or money.

Because the government proffered that other evidence to be admitted at trial shows that Shelton performed odd jobs for individuals other than Smith and Smallwood, replacing the reference to Smallwood with a neutral pronoun is sufficient to eliminate the accusatory and incriminatory nature of the statement. Thus, Agent Norton may testify that Shelton performed odd jobs for Smith and others in exchange for money or cocaine.[17]

The following four statements made by Smith to Agent Norton and memorialized in the latter's 302 report were admissible under *Bruton* and its progeny only after the statements were redacted to eliminate not only Smallwood's name but also any reference to his existence or the existence of "another person." Put differently, it was not sufficient to replace the references to Smallwood with a neutral pronoun in the following four statements because the resulting redacted statements would nonetheless be directly accusatory or facially incriminatory of Smallwood and would thus violate his Sixth Amendment confrontation right. These four statements, and the reasons for the inadequacy of a neutral pronoun substitution, are as follows:

(1) Smith stated that he "frequently allowed Smallwood to utilize his [Smith's] vehicle knowing that Smallwood's purpose for using it was to transport cocaine and/or complete a drug transaction."

Because the statement would nonetheless incriminate Smallwood even if Smallwood's name were substituted with a neutral pronoun, the reference to Smallwood, his existence, and the existence of "another person" to whom Smith lent his car must be omitted entirely. And, because this statement cannot be sensibly redacted to omit the reference to Smallwood without the

**15.** With regard to this statement, however, Agent Norton at trial did not substitute the reference to Smallwood with a neutral pronoun; instead, he testified only that Smith admitted renting another residence in Maryland under an alias.

**16.** While in this instance the reference to Smallwood is, in practice, omitted entirely, Agent Norton's testimony that Smith stated that the seized money and drugs did not belong to him necessarily implies that they belonged to someone else who resided in or used the Hyattsville residence. Therefore, this statement has the same effect as a redac-

tion in which Smallwood's name is substituted with a neutral pronoun.

**17.** Also worth noting is that Agent Norton testified at trial that Smith stated that Shelton knew where Smith and another person kept cocaine and money in the 49th Street apartment. While the court did not issue a bench ruling with regard to Smith's statement that Shelton knew where Smith and Smallwood kept their cocaine and money, it was appropriate under the principles elucidated here for Agent Norton to replace the reference to Smallwood with a neutral pronoun and testify as he did.

substitution of a neutral pronoun, the entire statement must be excluded.

(2) Smith stated that Smallwood, Smith, and two of Smith's friends, who were fugitives from drug charges in Philadelphia, Pennsylvania, were arrested in November 1996 when the FBI raided Smith and Smallwood's Hyattsville, Maryland home.

As above, the reference to Smallwood, his existence, and the existence of another person must be omitted entirely because substituting a neutral pronoun for Smallwood's name does not, with respect to Smallwood, eliminate the accusatory and incriminatory nature of the statement. Thus, Agent Norton may testify that Smith said that he, Smith, and various persons who were fugitives from drug charges elsewhere were arrested at the Hyattsville, Maryland residence at the time of the FBI raid.

(3) Smith stated that he, Smith, beat Shelton up on one occasion because (i) he caught Shelton trying to steal money from him and Smallwood and (ii) he and Smallwood suspected that Shelton had told others of the location of Smith and Smallwood's apartment which permitted those individuals to rob the apartment and steal Smith and Smallwood's drugs and money.

References here to Smallwood and to any other individual must be omitted entirely to eliminate the accusatory and incriminatory nature of the statement with respect to Smallwood. Thus, Agent Norton may only testify that Smith said that he beat up Shelton on one occasion because (i) he, Smith, caught Shelton trying to steal money from him and (ii) he, Smith, suspected that Shelton had told others of the location

of the apartment, resulting in the robbery of his drugs and money.[18]

(4) In response to Agent Norton's questions regarding Smallwood's foot injury allegedly sustained by a gunshot in the course of Shelton's murder, Smith stated that he knew (i) that Smallwood had been shot in the foot once before and (ii) that Smallwood always had problems with his feet.

The reference to Smallwood, and to any other individual, must be omitted entirely from this statement to eliminate its accusatory and incriminatory nature. And, because this statement cannot sensibly be redacted to omit the reference to Smallwood without substituting a neutral pronoun, the entire statement must be excluded.

In sum, because Smith's statement may be redacted (i) to substitute a neutral pronoun such as "person" or "individual" for Smallwood's name in some instances or (ii) in other instances, to omit references to Smallwood, his existence, and the existence of "another person," defendant's motion to sever must be denied under *Bruton* and its progeny in this circuit. While in certain circumstances the substitution of a neutral pronoun for Smallwood's name results in a redacted statement that is not directly accusatory or facially incriminatory and thus is admissible, in other circumstances this kind of redaction and substitution does not eliminate the accusatory and incriminatory nature of the statement. In those circumstances, the statement was redacted to eliminate any reference not only to Smallwood's name, but also to his

---

**18.** Yet, at trial, Agent Norton inadvertently testified that Smith stated that "[he] and another person had suspected that he had provided information to other people that resulted in their 49th Street apartment being broken into and resulting in their cocaine and money being stolen. And as a result, he [Smith] beat Conrad Shelton up." Neither party objected to this inadvertent reference.

existence and the existence of any other individual. And in other circumstances when no redaction or neutral pronoun substitution will suffice to eliminate a Sixth Amendment violation, the entire statement must be excluded.