### UNITED STATES of America

#### v.

### Denis RIVERA, Oscar Antonio Grande, Ismael Juarez Cisneros, Oscar Alexander Garcia–Orellana, Defendants.

#### No. CRIM.A. 04–283.

United States District Court, E.D. Virginia. Alexandria Division.

March 24, 2005.

Ronald Walutes, Esquire, Assistant United States Attorney, United States Attorney's Office, Patricia T. Giles, Esquire, Assistant United States Attorney, United States Attorney Office, Alexandria, VA, for Plaintiff.

Robert L. Jenkins, Jr. Esquire, Alexandria, VA, David P. Baugh, Esquire, Richmond, VA, Nina J. Ginsberg, Esquire, Alexandria, VA, Alexander N. Levay, Jr., Esquire, Leesburg, VA, Jerome P. Aquino, Esquire, Alexandria, VA, L. Felipe Restrepo, Esquire, Philadelphia, PA, James C. Clark, Esquire, Frank Salvato, Esquire, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Motions of (1) Defendant Oscar Antonio Grande's Motion for a Trial Severance; (2) Defendant Oscar Antonio Grande's Motion for Severance from any "Death Eligible" Co–Defendants for Purposes of a Special Hearing to Determine whether a Sentence of Death is Justified Pursuant 18 U.S.C. Section 3593 and that the Government be Required to Elect Which Capital Defendant it Wishes to Have Sentenced First, and that the Remaining Capital Defendant or Defendants be Severed and Sentenced by New Juries Specially Empaneled for Such Sentencing Hearings Pursuant 18 U.S.C. § 3593(b) [hereinafter "Grande's Motion for Severance in Penalty Phase"]; (3) Oscar Alexander Garcia–Orellana's Motion to Sever the Defendant Garcia–Orellana from the Co–Defendants in the Penalty Phase of Trial, Should Such a Proceeding Become Necessary [hereinafter "Garcia–Orellana's Motion to Sever in Penalty Phase"]; (4) Ismael Juarez Cisnero's Motion to Require the Government to Elect Which Defendant it Wishes to Have Sentenced First, and that the remaining Defendants be Severed and Sentenced by New Juries Specially Empaneled for Such Sentencing Hearings Pursuant to 18 U.S.C. Section 3593(b) [hereinafter "Cisnero's Motion for Severance in the Penalty Phase"].[1] For the reasons stated below, the Court denies Defendant's Motions for Severance and holds that the defendants trial and penalty phase, if it becomes necessary, will proceed jointly.

## I. BACKGROUND

The government alleges that Defendants Denis Rivera, Oscar Antonio Grande, Ismael Juarez Cisneros, and Oscar Alexander Garcia–Orellana conspired together to murder Brenda Paz, who was preparing to testify against Denis Rivera in this Court for the murder of Joaquin Diaz. All four defendants and the victim were members of the Mara Salvatrucha, also known as "MS–13," a gang with roots in El Salvador whose presence has spread throughout the country. MS–13 is alleged to be involved in many criminal enterprises including car theft, narcotics and illegal firearms sales, assaults, threats, and witness intimidation.

All of the defendants in this case have filed individual motions to sever both the trial phase and the penalty phase and the motions have subsequently been adopted by all of the defendants.[2] All four defen-

1. The Court also has considered Ismael Juarez Cisnero's Supplemental Authority in Support of its Motion for Severance; Second Supplemental Memorandum in Support of Motion for Severance; and Additional Submission in Support of this Motion filed on Dec. 28, 2004, a discussion paper with empir-

ical data entitled *Severance of Co–Defendants in Capital Cases: Some Empirical Evidence,* Edward J. Bronson, College of Behavioral and Social Sciences, California State University, Chico, Discussion Paper Series No. 94–1.

2. Although this Memorandum Opinion may refer to arguments made by a specific defen-

dants are charged with (1) Conspiracy to Tamper with a Witness or an Informant, 18 U.S.C. § 1512(k), (2) Conspiracy to Retaliate Against a Witness or an Informant, 18 U.S.C. § 1513(e), (3) Killing a Person Aiding a Federal Investigation, 18 U.S.C. §§ 2 & 1121(a)(2), (4) Tampering with a Witness or an Informant, 18 U.S.C. §§ 2 & 1512(a)(1), and (5) Retaliating Against a Witness or an Informant, 18 U.S.C. §§ 2 & 1513(a)(1). The government filed a Notice of Intent to Seek a Sentence of Death against all four defendants on October 1, 2004.

## Severance Motions

### (1) Oscar Antonio Grande's Motion for Trial Severance

Mr. Grande argues that severance in the trial phase is required by *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because admission of the statements made by co-defendants Ismael Cisneros and Oscar Garcia–Orellana would violate Mr. Grande's constitutional right to confrontation and the statements can not be redacted to eliminate the *Bruton* problem.

Grande also asserts that severance is warranted under Federal Rule of Criminal Procedure 14 because he has reason to believe his co-defendants intend to offer the statements of Cisneros and Garcia–Orellana in their entirety in both the trial and penalty phases.

### (2) Oscar Antonio Grande's Motion for Severance in Penalty Phase

Mr. Grande argues that conducting a joint penalty phase hearing would violate the Fifth and Eighth Amendments to the United States Constitution, as well as 18 U.S.C. §§ 3591–93. Specifically, Mr. Grande argues that severance of the penalty phase is required to protect his Eighth Amendment right to an individualized determination of his sentence because the co-defendants will assert mutually antagonistic defenses. Mr. Grande also argues that there is a conflict between the Fifth Amendment (self-incrimination) and Eighth Amendment (mitigation) rights of the co-defendants, because there is a substantial likelihood that in according mitigating weight to one defendant's voluntary self-incrimination, the jury will at the same time treat as aggravating the failure of his co-defendants to produce similar evidence in mitigation. Furthermore, Grande asserts that the constitutional rights to fair notice and full rebuttal, mandated by 18 U.S.C. § 3593(a) will be violated because his co-defendants will offer evidence designed to aggravate the punishment of his co-defendants and they are not required to notify him prior to trial, as the government is so required.

### (3) Oscar Alexander Garcia–Orellana's Motion to Sever in Penalty Phase

Mr. Garcia–Orellana argues that a joint penalty phase would violate his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. Specifically, he asserts that he will not be afforded a genuine opportunity to be heard during the sentencing phase because his individual voice and specific mitigating factors in mitigation will be lost among the voices of other defendants, in violation of his Fifth and Fourteenth Amendment right to due process and his Eighth Amendment right to fundamental respect for humanity. Furthermore, he argues that the divergent interests of the co-defendants will enlist all of the defendants as co-prosecutors of each other. Since the defendants would be al-

---

dant, with the Court's permission the defendants have adopted the applicable arguments of each other, and those arguments are deemed to have been made by other defendants to whom they may apply.

lowed to proceed without giving notice to the other defendants of their evidence in mitigation, he asserts that the result would violate his Sixth Amendment right to confrontation of witnesses.

**(4) Ismael Juarez Cisneros' Motion for Severance in the Penalty Phase and Supplemental Support**

Mr. Cisneros argues that a severance at the penalty phase is required to protect his Eighth Amendment right to an individualized determination of his Sentence. Mr. Cisneros also asserts that a joint penalty phase would create a conflict between the right not to disclose penalty phase evidence until trial and the due process right of rebuttal. Mr. Cisneros requests that the Court require the government to elect which defendant it wishes to have sentenced first, and that the remaining defendants be severed and sentenced by new juries specially empaneled for such sentencing hearings. In his supplemental motion, Mr. Cisneros requests that the Court sever the penalty phase so that he can introduce his unredacted confession as mitigating evidence to rebut the government's non-statutory aggravators and its predictions of future dangerousness. In his second supplemental motion, Mr. Cisneros asserts that there is a conflict between the Fifth Amendment rights against self-incrimination and the Eighth Amendment mitigation rights of the co-defendants. He also asserts that there is a conflict between the Sixth Amendment rights under *Bruton* and Eighth Amendment mitigation rights of the co-defendants.

## II. DISCUSSION

### A. Standard of Review

■■■ "The grant or denial of a motion for severance ... is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion."

*United States v. West,* 877 F.2d 281, 287–88 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). The party moving for severance must establish that actual prejudice would result from a joint trial, *United States v. Brooks,* 957 F.2d 1138, 1145 (4th Cir.), *cert. denied,* 505 U.S. 1228, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992), and not merely that "a separate trial would offer[ ] a better chance of acquittal." *United States v. Spitler,* 800 F.2d 1267, 1271 (4th Cir.1986). Severance is only required where a joint trial "deprives the defendant of a fair trial and results in a miscarriage of justice." *United States v. Rusher,* 966 F.2d 868, 878 (4th Cir.1992) (quoting *United States v. Becker,* 585 F.2d 703, 706 (4th Cir.1978)).

■■■ It is a well-established principle that defendants that are charged in the same criminal conspiracy and indicted together should be tried together. *See, e.g., United States v. Reavis,* 48 F.3d 763, 767 (4th Cir.1995); *Spitler,* 800 F.2d at 1271. Federal Rule of Criminal Procedure 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction."

In *Zafiro v. United States,* the Supreme Court stated that there is a preference in the federal system for joint trials of defendants indicted together, as joint trials "promote efficiency and 'serve the interest of justice avoiding the scandal and inequity of inconsistent verdicts.'" 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (citation omitted). The Supreme Court has endorsed the notion that a joint trial typically allows "the jury [to] obtain[ ] a more complete view of all the acts underlying the charges than would be possible in separate trials" and thus "to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant

and to assign fairly the respective responsibilities of each defendant in the sentencing." *Buchanan v. Kentucky,* 483 U.S. 402, 418, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

However, there are situations where the interests promoted by joint trials are outweighed by prejudice to the defendants or the government. Federal Rule of Criminal Procedure 14(a) provides:

> If the joinder of offenses or defendants ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief justice requires.

■ The Supreme Court has made it clear that "when defendants are properly joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. In cases in which the risk of prejudice is high, a severance may be necessary, however, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.; see also United States v. Hayden,* 85 F.3d 153, 160 (4th Cir.1996). ("The mere showing of prejudice is not enough to require severance. Rather, tailoring of relief, if any, for any potential prejudice resulting from a joint trial is left to the district court's sound discretion.") (citation omitted).

■ The Supreme Court has expressly recognized that death is a different kind of punishment from any other which may be imposed in this country. *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Because death is different in both its severity and its finality, Eighth Amendment jurisprudence requires that a capital case has a heightened need for reliability and requires the strict protection of a defendant's constitutional right to an individualized sentencing decision. *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973; *see also, Woodson v. North Carolina,* 428 U.S. 280, 304–05, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality).

## B. Analysis

The Court denies Defendant's motions for severance, because severance is not required under any of the theories offered by the defendants and it is appropriate for their trials and penalty phase proceedings, if it becomes necessary, to proceed jointly.

### 1. Severance in the Trial Phase

■■ Mr. Grande argues that the admission at trial of the post-arrest statements made by co-defendants Mr. Garcia–Orellana and Mr. Cisneros would violate Mr. Grande's constitutional right to confrontation during the trial. The question of severance often arises when a co-defendant's statement inculpates a co-defendant, as is the case here. A criminal defendant's right to confrontation in the form of cross-examination is an important trial right guaranteed by the Confrontation Clause of the Sixth Amendment. *See Bruton,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *see also Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

In *Bruton,* the Supreme Court held that the admission of a co-defendant's confession that implicated the defendant at a joint trial was a violation of the defendant's Sixth Amendment right to confrontation, even though the jury was instructed to consider that testimony only against a co-defendant. *Bruton,* 391 U.S. at 126, 88 S.Ct. 1620. The Court's holding in *Bru-*

*ton,* however, does not automatically require severance in order to avoid this type of violation of the Confrontation. Clause of the Sixth Amendment. In *Richardson v. Marsh,* the Supreme Court held that the admission of a non-testifying co-defendant's confession did not violate the defendant's rights under the confrontation clause of the Sixth Amendment where the confession was redacted to eliminate not only the defendant's name, but any reference to her existence, and the court instructed the jury not to use the confession in any way against the defendant. 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). The Court left open the question of whether a confession that redacted the co-defendant's name and replaced it with a symbol or a neutral pronoun would be admissible under *Bruton. Id.* at 211 n. 5, 107 S.Ct. 1702.

The Supreme Court addressed the question left open in *Marsh* in *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). In *Gray,* the Court held that a statement that has been redacted to replace the co-defendants name "with an obvious blank, the word 'delete,' a symbol, or similarly notif[ies] the jury that a name has been deleted," such that it was still both "facially incriminating" and "directly accusatory" falls under *Bruton* and is inadmissible. 523 U.S. at 195, 118 S.Ct. 1151. Fourth Circuit authority interpreting *Bruton, Richardson,* and *Gray* makes it clear that defendant's statements are admissible if redacted and replaced with a neutral pronoun or phrase such as "person" or "individual" or even "friend," "partner," "associate," or "client," provided that such a neutral statement does not render the statement "directly accusatory" or "facially incriminatory." *See, e.g., United States v. Akinkoye,* 185 F.3d 192, 198 (4th Cir.1999); *United States v. Cuong Gia Le,* 316 F.Supp.2d 330, 334 (E.D.Va.2004); *United States v. Smallwood,* 307

F.Supp.2d 784, 789 (E.D.Va.2004) (listing Fourth Circuit cases). The Fourth Circuit also has extended *Richardson,* "holding that a statement redacted such that a co-defendant's name is replaced by 'a symbol or neutral pronoun' is admissible under *Bruton* provided it is not facially incriminatory and thus is admissible 'even though the statement's application to [the co-defendant] is linked up by other evidence properly admitted against the defendant.'" *Id.* (quoting *United States v. Vogt,* 910 F.2d 1184, 1191–92 (4th Cir.1990)). The *Bruton* issue in this case is whether Mr. Garcia–Orellana and Mr. Cisnero's statements can be redacted such that they are properly admissible without violating the Sixth Amendment confrontation rights of any of the co-defendants.

In this case, "the universe of participants" includes not only the defendants on trial but also the universe of MS–13 gang members. *Bruton* and its progeny does not require that the co-defendant's statement omit any reference to the existence of another person, but only that the statement not facially incriminate or directly accuse the defendant. *Akinkoye,* 185 F.3d at 198 (ruling that the replacement of defendants' names with the phrase "another person" or "another individual" did not prejudice the defendant in anyway); *United States v. Smith,* 43 Fed.Appx. 529, 532 (4th Cir.2002) (unpublished) (replacing reference to defendant with phrase "a friend" and "the friend" in co-defendant's statement to FBI did not violate *Bruton* ).

In *United States v. Richards,* the Court examined the use of a redacted statement in a small universe of three participants in an armed robbery. 241 F.3d 335 (3d Cir.), *cert. denied,* 533 U.S. 960, 121 S.Ct. 2615, 150 L.Ed.2d 770 (2001). The redacted statement referred to one of the co-defendants as "friend." The Court held that such a redaction "sharply incriminated"

the defendant, since he was the only other person involved in the case and there were only three participants in the robbery. *Id.* at 341. The Court held that such a redaction violated the defendants' rights under *Bruton.*

The Fourth Circuit, however, has ruled that neutral pronouns are appropriate even where there are only two defendants. *United States v. Holmes,* 30 Fed.Appx. 302 (4th Cir.2002). In *Holmes,* the government introduced the testimony of the defendant's cellmate who said that the defendant had confessed to committing a string of robberies and that he had the same partner for all of those robberies. *Id.* at 307–08. The defendant argued that the term "partner" directly implicated him because there were only two defendants on trial. *Id.* The Fourth Circuit found that "partner" was a neutral term and did not directly implicate the defendant, and that the jury was still required to link the evidence. *Id.*

In this case, the "universe of participants" is much larger than the one upheld by the Fourth Circuit in *Holmes.* In fact, the "universe of participants" includes not only the defendants on trial but also the universe of MS–13 gang members. As evidenced by the Indictment, the Court expects that there will be testimony about the possible involvement of others including "a juvenile male member of MS–13." Indictment ¶¶ 3–6, 8. The indictment also refers generally to the involvement of "members of MS–13 who would be killing [Ms. Paz]," a "general meeting of the CLS clique of MS–13 to kill Brenda Paz," and states that "other members of the CLS clique of MS–13 met at the Holiday Inn ... and discussed Brenda Paz ... and her cooperation with and assistance to law enforcement." *Id.* ¶¶ 6, 9–10. It also states that Ms. Paz "was a potential witness against other members of MS–13 for their

criminal activities." *Id.* ¶ 10. The Indictment further suggests that the murder of Ms. Paz may have been "discussed at the general meetings of MS–13, called 'masses.'" *Id.* at ¶ 18. The universe of gang members and possible participants in the murder of Brenda Paz is quite broad, and therefore the Court concludes that the redacted statements do not directly implicate the co-defendants. The jury, however, is permitted under *Bruton* and its progeny to link up other evidence properly admitted by the government. *See Smallwood,* 307 F.Supp.2d at 788–89.

In this case, both Mr. Garcia–Orellana's statement and Mr. Cisnero's statements can be redacted to eliminate the *Bruton* problem. The government seeks to introduce portions of the out-of-court statements of Mr. Garcia–Orellana and Mr. Cisneros. The government has submitted its proposed redactions of these statements to the Court for approval. The defendants objected to the proposed redactions. The Court, however, has redacted the statements in a manner that does not directly implicate any of the defendants and is consistent with *Bruton* and its progeny. The statements of Mr. Garcia–Orellana and Mr. Cisneros as redacted by the Court are consistent with *Bruton* and its progeny, and, therefore, the use of the redacted statements does not mandate severance.

### 2. Severance in the Penalty Phase

In federal capital cases, defendants found guilty are entitled to a separate sentencing hearing to determine the punishment to be imposed. 18 U.S.C. § 3593(b). The penalty phase hearings in this case should be heard by the same jury who hears the joint guilt phase of the trial. 18 U.S.C. § 3593(b)(1) provides that a sentencing hearing in a capital case shall be conducted "before the jury that deter-

mined the defendant's guilt." The statute allows for a sentencing hearing to be conducted in front of a jury that did not hear the guilt phase if "the jury that determined the defendant's guilt was discharged for good cause." 18 U.S.C. § 3593(b)(2)(C).[3] "Good Cause" under § 3593(b)(2)(C) "cannot be read . . . expansively," rather it "plainly encompasses such events as juror disqualification . . ." *Jones v. United States*, 527 U.S. 373, 381, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (holding that under the Federal Death Penalty Act, a jury's failure to reach unanimous verdict does not create "good cause" for discharge of jury, as will require court to impanel a second jury). In *United States v. Tipton*, the Fourth Circuit stated that

> [t]he concerns raised by appellants are legitimate ones. But there are countervailing considerations that properly may be weighed in the discretionary balance . . . severance here would have required three separate, largely repetitive penalty hearings before this jury. The same considerations of efficiency and fairness to the Government (and possibly the accused as well) that militate in favor of joint trials of jointly-charged defendants in the guilt phase, must remain generally in play at the penalty phase.

*Tipton*, 90 F.3d 861, 892 (1996) (citations omitted). In this case, the defendants argue that if they are found guilty, the penalty phase must be severed in order to protect their constitutional rights. Similar to *Tipton*, severance in this case would require four largely repetitive penalty hearings before the jury. Furthermore, the threat posed to individualized consideration could not entirely be eliminated by conducting separate hearings. The Court is very mindful of defendants' important constitutional rights to individualized consideration in both the guilt and penalty phases. The Court finds that the threat posed to individualized consideration will best be addressed by a joint penalty phase governed by the Court's limiting instructions and the careful application of the appropriate rules of evidence.

*Individualized Determination of Sentence*

■ The defendants have an Eighth Amendment right to an "individualized determination" of their penalty phase sentence, however, this important right does not compel an individual penalty phase hearing. In *Woodson*, the Supreme Court held that the Eighth Amendment requires that the sentencing decision in a capital case must be individualized, based upon the character and record of the offender and the circumstances of the particular offense. The Supreme Court stated

> [I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*Woodson*, 428 U.S. at 304, 96 S.Ct. 2978 (holding that North Carolina's mandatory death sentence for first-degree murder violated Eighth and Fourteenth Amendments). The Supreme Court reiterated the importance of the constitutional requirement of individualized sentencing in capital cases. The Court stated that "[g]iven that the imposition of death by public authority is so profoundly different

---

**3.** 18 U.S.C. § 3593(b)(2) also allows for a jury impaneled for the purpose of hearing the sentence phase, that has not heard the guilt phase in other situations not present here, if

the defendant was convicted upon a plea of guilty, convicted after a bench trial, or after imposition of a death sentence reconsideration of the sentence is necessary.

from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases." *Id.; see also Lockett,* 438 U.S. at 605, 98 S.Ct. 2954 (We insist on "individualized consideration as a constitutional requirement in imposing the death sentence.").

In any case involving multiple defendants, the risk that each defendant will not be given individual consideration by the jury in a joint penalty phase hearing exists. Appropriate jury instructions, however, will often effectively safeguard the defendant's rights to an individual assessment at a joint penalty hearing. *Tipton,* 90 F.3d at 892–93. In *Tipton,* the Fourth Circuit found that jury instructions were adequate to ensure that the jury gives each defendant the individualized consideration to which he is entitled. *Id.* The Court stated, "[w]e are satisfied that the court's frequent instructions on the need to give each defendant's case individualized consideration sufficed to reduce the risk to acceptable levels." *Id.* The court instructed the jury at the outset of the joint capital penalty phase hearing for three defendants that they "must consider each defendant individually." *Id.* at 893. This instruction was repeated at the conclusion of the penalty phase hearing and further emphasized by the court in its instructions addressing the weighing process. *Id.* Furthermore, there is a presumption that jurors will follow their instructions. *See Richardson,* 481 U.S. at 206, 107 S.Ct. 1702. In this case, the Court began the trial by instructing the prospective jury panel that each defendant must be considered separately. Additionally, the Court has repeated this important instruction for each juror at the time of individual questioning during the death qualification proceedings. The Court finds that appropriate jury instructions emphasizing the importance of the constitutional rights of a defendant to individualized sen-

tencing will effectively safeguard the defendant's rights to an individualized assessment during the joint penalty phase.

*Mitigating Factors*

 The Eighth Amendment requires that the sentencer in a capital case may not be precluded from considering any relevant mitigating evidence. A jury cannot be precluded from considering "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett,* 438 U.S. at 604, 98 S.Ct. 2954. It is well settled that a capital defendant must be permitted to offer in mitigation of punishment, factors such as his post-crime cooperation with law enforcement, and his expressed remorse during the trial or sentencing proceedings. *See Gregg,* 428 U.S. at 197, 96 S.Ct. 2909 (listing the extent of the defendant's cooperation with law enforcement as an example of a mitigating factor).

 Mr. Cisneros moves for severance of the penalty phase so that he may introduce his full confession as a basis for a sentence less than death. He argues that his unredacted confession is evidence establishing his "early and complete renunciation of his gang affiliation and loyalty" and is mitigating evidence that must be considered by the jury. Cisneros' Supplemental Authority Supp. Mot. Sever at 2. *Bruton* and its progeny apply to the statements of the co-defendants in the penalty phase. Accordingly, the Court will formulate redacted versions of Mr. Cisneros' statements specifically for the penalty phase of the hearing. The redacted statements will not facially incriminate the co-defendants, in accordance with *Bruton,* but will include all exculpatory evidence and therefore none of its value as mitigating evidence will be diminished. Further-

more, Mr. Cisneros can always take the stand in the penalty phase, subject to cross-examination by his co-defendants, to reiterate to the jury any potential mitigating evidence, including the extent of his cooperation with law enforcement. Accordingly, the defendants' Eighth Amendment mitigation rights will not be impaired in a joint penalty phase proceeding.

### Comparison of Culpability

■ At a joint sentencing hearing, the jury is directed to compare the defendant's culpability with the culpability of his co-defendants. See 18 U.S.C. § 3592(a)(4) (Jury must consider as mitigating factor that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death."). Defendant's argue that this comparison creates a conflict, because it is likely that the jury in according mitigating weight to the confessions of Mr. Garcia–Orellana and Mr. Cisneros, the jury will treat as aggravating the failure of his co-defendants to produce similar evidence in mitigation. In any joint trial or penalty phase, however, there will be differences between the defendants. At a trial, a defendant may argue the positive significance of his decision to testify but may not ask the jury to draw a correspondingly negative inference against his co-defendant. *United States v. McClure*, 734 F.2d 484, 489–91 (10th Cir.1984). The Court will instruct the jury that it can not consider any defendants' decision to remain silent in determining guilt or innocence, consistent with the defendants' Fifth Amendment rights against self-incrimination. A capital jury is presumed, at both a penalty phase and the guilt phase to understand and follow its guiding instructions. *Tipton*, 90 F.3d at 893 (citing *Richardson*, 481 U.S. at 206, 107 S.Ct. 1702).

### 3. Government and Public Interest

■ Although the most important considerations are the defendants' constitutional rights to individualized consideration, the Court should also consider the efficiency interests of the judicial system and the government, as well as the protection of government witnesses. The Court finds that a joint trial and penalty phase would promote justice by avoiding the scandal of inconsistent verdicts. *See Hayden*, 85 F.3d 153, 160 (4th Cir.1996) (quoting *Zafiro*, 506 U.S. at 537, 113 S.Ct. 933) (quoting *Richardson*, 481 U.S. at 210, 107 S.Ct. 1702). In *Zafiro*, the Supreme Court stated that there is a preference in the federal system for joint trials of defendants indicted together, as joint trials "promote efficiency and 'serve the interest of justice avoiding the scandal and inequity of inconsistent verdicts.'" 506 U.S. at 537, 113 S.Ct. 933 (citation omitted). The Supreme Court has endorsed the notion that a joint trial typically allows "the jury [to] obtain[] a more complete view of all the acts underlying the charges than would be possible in separate trials" and thus "to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing." *Buchanan*, 483 U.S. at 418, 107 S.Ct. 2906. In this case, the jury is being asked to make a judgment about group conduct and a joint trial will allow them to fairly judge the appropriate level of responsibility of each defendant. Furthermore, a joint trial will eliminate scandal of inconsistent verdicts. The Court finds that a joint trial of the defendants is appropriate because it serves the interests of justice by allowing the jurors to fairly assign the responsibility of each of the defendants and avoiding the scandal of inconsistent verdicts.

*Protection of Witnesses*

██ Additionally, severance may increase the threat to government witnesses. The protection of witness is of particular concern in this case, because it involves the murder of a federal witness. Furthermore, the government asserts that MS–13 has threatened some of the other witnesses' lives if they testify. Testifying at a joint trial and penalty trial, will reduce any risk to witnesses because they will not have to testify multiple times. It also minimizes any incentive to silence these witnesses after they testify. *See United States v. Taylor*, 293 F.Supp.2d 884, 899 (N.D.Ind.2003) ("[E]vidence presented by the government ... indicates witnesses may be in danger from the defendants or their allies. Protracted litigation would increase the chances that witnesses would be intimidated by the perceived danger to them and their families and become unwilling to testify."). Because this case involves the alleged murder of a federal government witness, the minimization of risk to government witnesses is a factor that mitigates in favor of a joint trial and penalty phase.

### III. CONCLUSION

In conclusion, the Court denies Defendants' Motions for severance in both the trial and penalty phases. Defendants have failed to show "that a joint trial [will] compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Accordingly, the Court holds that the trial and penalty phase, if it becomes necessary, of Defendants Denis Rivera, Oscar Antonio Grande, Oscar Garcia–Orellana, and Ismael Juarez Cisneros will proceed jointly.

For the forgoing reasons, it is hereby

ORDERED that

(1) Defendant Oscar Antonio Grande's Motion for a Trial Severance is DENIED.

(2) Defendant Oscar Antonio Grande's Motion for Severance from any "Death Eligible" Co–Defendants for Purposes of a Special Hearing to Determine whether a Sentence of Death is Justified Pursuant 18 U.S.C. Section 3593 and that the Government be Required to Elect Which Capital Defendant it Wishes to Have Sentenced First, and that the Remaining Capital Defendant or Defendants be Severed and Sentenced by New Juries Specially Empaneled for Such Sentencing Hearings Pursuant 18 U.S.C. § 3593(b) is DENIED.

(3) Oscar Alexander Garcia–Orellana's Motion to Sever the Defendant Garcia–Orellana from the Co–Defendants in the Penalty Phase of Trial, Should Such a Proceeding Become Necessary is DENIED.

(4) Ismael Juarez Cisnero's Motion to Require the Government to Elect Which Defendant it Wishes to Have Sentenced First, and that the remaining Defendants be Severed and Sentenced by New Juries Specially Empaneled for Such Sentencing Hearings Pursuant to 18 U.S.C. Section 3593(b); (5) Supplemental Authority in Support of its Motion for Severance; and (6)Additional Submission in Support of his Motion are DENIED.